IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Case No. 2:21-cv-12570 |
| Plaintiff, | ) |
| | ) Hon. Gershwin A. Drain |
| v. | ) |
| | ) |
| JAMES J. KELLY, JR., | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**ORDER GRANTING MOTION FOR A TEMPORARY RESTRAINING ORDER [#3], FREEZING ASSETS, AND SCHEDULING HEARING**

### I. INTRODUCTION

On November 1, 2021, the Government filed a Complaint seeking to reduce to judgment and collect the penalties, plus statutory interest, assessed against Defendant James J. Kelly for his willful failure to report his financial interest in a foreign bank account during tax years 2013, 2014, and 2015. In 2019, Defendant was assessed penalties in the amount of $769,126.00 for his willful failure to timely file a Report of Foreign Bank and Financial Accounts, commonly known as an "FBAR," for the subject tax years. *See* U.S.C. § 5321 *et seq*. The Government asserts that, despite notice and demand for payment, Defendant has failed to pay the FBAR penalties, which now amount to a total of $872,378.54, plus interest and associated fees accruing from and after October 1, 2021.

1

Now before the Court is the Government's *Ex Parte* Motion for a Temporary Restraining Order Regarding Funds and Assets Owned by James J. Kelly, Jr., filed on November 2, 2021. Along with the present motion, the Government attaches counsel's Declaration and Internal Revenue Services (IRS) Agent Erik Anderson's Declaration.

Upon review of the Complaint, the Government's *Ex Parte* Motion, the exhibits attached thereto, the applicable statute and case law, the Court finds the balance of factors favor entry of a temporary restraining order until the Defendant can be heard. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 1997). The Court also concludes Defendant's years-long pattern and practice of concealing his assets from, and his debts to, the United States warrants the entry of the temporary restraining order without notice to the Defendant. *See First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993); *see also United States SEC v. Bravata*, No. 09-12950, 2009 U.S. Dist. LEXIS 64609, *4-5 (E.D. Mich. Jul. 27, 2009).

## II.  FACTUAL BACKGROUND

Defendant worked as an anesthesiologist in various hospitals around Michigan until he lost his license in 2008. *See* ECF No. 3-2, Dec. of Erik Anderson, ¶ 8. For tax years 1999 through 2007, Defendant failed to file federal income tax returns for the income he earned from his work as an anesthesiologist.

*Id*. Between 2004 through 2007, Defendant instructed his employers to make his checks payable to various nominees, such as his mother, as well as fictious entities. *Id*. at ¶ 12 (payors were directed to make checks out to Gas & Tubes, Inc., SAS, Inc. and Celson, Inc., however none of these entities exist).

In 2008, after a non-related criminal investigation resulted in the execution of a search warrant at his home, Defendant fled the United States to avoid prosecution. *Id*. at ¶ 18. Defendant brought $1,854,463.43 divided between seven cashier's checks with him and opened a numbered bank account with Finter Bank in Zurich, Switzerland. *Id*. at ¶ 19. Defendant was listed as the account signatory and the beneficial owner in the opening account documents. *Id*. Defendant requested that the bank not mail him correspondence related to his Finter Account, but rather to hold it in his file at the bank. *Id*. at ¶ 23.

Defendant was arrested in Portugal on April 23, 2008, after attempting to secure a passport. *Id*. at ¶ 25. He was extradited back to the United States to face prosecution. *Id*. Defendant pleaded guilty to the federal criminal charges against him, and as part of his plea agreement, he faced a possible fine of $250,000.00 per count. *See United States v. Kelly*, No. 2:08-CR-20316-DML-RSW. However, at sentencing, the district judge waived the imposition of a fine after Defendant represented he was unable to pay the fines. *Id*. at ECF No. 19 at 42:8-9. Defendant was released from prison in December of 2010. *Id*. at ¶ 25.

In November of 2013, after Finter Bank had repeatedly requested Defendant provide FBAR forms, the bank advised Defendant that he should consider participating in the IRS's Offshore Voluntary Disclosure Program ("OVDP") if he had not yet reported his account to the IRS. *Id.* In April of 2015, the IRS preliminarily accepted Defendant into the OVDP after he submitted a Form 14457 Disclosure Letter to the IRS in March of 2015. As part of the OVDP, Defendant disclosed the existence of his Finter Account, which he had opened in 2008 and closed in 2015. *Id.* at §§ 33-34. In December of 2016, Defendant filed delinquent FBARS for tax years 2008 through 2013. *Id.* at §§ 35, 41. Defendant failed to file FBARS for any subsequent years. *Id*.

When Defendant closed his Finter Account in 2015, he instructed a representative to transfer the balance to Golden Eagle Services, for eventual deposit with Bank Alpinum AG in Vaduz, Liechtenstein. *Id*. at § 27. In 2016, Defendant opened an account ending in 1392 at Bank Alpinum AG and deposited the funds from the Finter Account. Defendant has maintained the Bank Alpinum Account through at least 2020. *Id.* at ¶ 29.

In 2018, the IRS removed Defendant from the OVDP for his lack of cooperation and failure to comply with the IRS's requests for information. *Id*. at ¶ 36. Since that time, Defendant has failed to respond to the IRS's examination letters or document requests. *Id*. at ¶ 38. Nor did he appear at scheduled

4

interviews. *Id*. In 2019, the IRS assessed FBAR penalties totaling $769,126.00 for tax years 2013, 2014 and 2015. *Id*. Despite notice and demand, Defendant has failed to pay any portion of his assessments, which continue to accrue interest. *Id*. at ¶¶ 6-7.

### III. LAW & ANALYSIS

#### A. Standard of Review

Temporary restraining orders and preliminary injunctions are extraordinary remedies designed to protect the status quo pending final resolution of a lawsuit. *See University of Texas v. Camenisch*, 451 U.S. 390 (1981). Whether to grant such relief is a matter within the discretion of the district court. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007).

The same factors are considered in determining whether to grant a request for either a temporary restraining order or a preliminary injunction. *See Sandison v. Michigan High School Athletic Assoc.,* 64 F.3d 1026, 1030 (6th Cir. 1995). The four factors that must be balanced and considered before the court may issue a temporary restraining order or preliminary injunction include: (1) the likelihood of the plaintiff's success on the merits; (2) whether the plaintiff will suffer irreparable injury without the injunction; (3) the harm to others which will occur if the injunction is granted; and (4) whether the injunction would serve the public interest. *Certified Restoration*, 511 F.3d at 542; *In re Eagle-Pitcher Industries,*

*Inc.*, 963 F.2d 855, 858 (6th Cir. 1992); and *N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 166 (6th Cir. 1989).

"None of these factors, standing alone, is a prerequisite to relief; rather, the court should balance them.." *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996). Preliminary injunctive relief "is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001).

### B. *Ex Parte*

The Federal Rules of Civil Procedure permit the district courts to enter temporary restraining orders without notice where:

> (A) specific facts in affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

Under the circumstances of this case, the Court finds Defendant's pattern of deceitful conduct, including his misrepresentation about his financial conditions to the district judge at his 2008 sentencing, his continuous failure to apprise IRS agents about the money located in an overseas account, and his deception in regard

6

to his financial picture, suggest a willingness to frustrate collection and warrant the entry of this temporary restraining order on an *ex parte* basis.

While *ex parte* relief is an extraordinary remedy, such relief is appropriate where notice "would render fruitless further prosecution of the action." *First Tech. Safety Sys.*, 11 F.3d at 650; *see also United States SEC v. Bravata*, No. 09-12950, 2009 U.S. Dist. LEXIS 64609, *4-5 (E.D. Mich. Jul. 27, 2009) (where "notice to the opposing party would cause irreparable harm because the notice might stimulate the very actions the restraining order is intended to prevent[,]" entry of an *ex parte* temporary restraining order is appropriate ).

### C. Likelihood of Success on the Merits

Here, the Court concludes the Government has a strong likelihood of success on the merits. The Government can prove by the preponderance of the evidence that Defendant willfully failed to file FBARS for tax years 2013, 2014 and 2015. Under the implementing regulations to the Bank Secrecy Act, United States citizens "having a financial interest in" a bank account in a foreign country must file a FBAR disclosing that interest for each year that it exists by June 30th "of each calendar year" the foreign bank account exceeds $10,000.00 during the previous calendar year. *See* 31 C.F.R. § 1010.350(a), (c).

To succeed on the merits of its claim, the Government must prove that: (1) Defendant was a citizen, resident, or person doing business in the United States

7

during 2013, 2014, and 2015; (2) Defendant had a "financial interest in, or signatory or other authority over a bank or other account" during those years; (3) the account had a balance of $10,000 or more during those years; (4) the account was in a foreign country; (5) Defendant failed to disclose the account to the IRS by June 30 of 2014, 2015 and 2016; (6) the failure to report the account was willful; and (7) the penalty was proper. *See United States v. Hawker*, No. 2:19-CV-836 TS, 2021 U.S. Dist. LEXIST 17783,*2 (D. Utah Jan. 28, 2021) (citing *McBride*, 908 F. Supp. 2d at 1201).

The evidence demonstrates the Government has a strong likelihood of success on the merits of its claim that Defendant willfully failed to file FBARs for the years at issue. Defendant is a United States citizen and a resident of Troy, Michigan. Defendant's financial interest in a bank account in Switzerland began in February of 2008 after he fled the country. Defendant held signatory and beneficiary control over that account until 2015 when he moved the funds to a bank in Liechtenstein. The accounts held well over a million dollars for each tax year in question. Finally, Defendant failed to timely file an FBAR for the tax year 2013 and has filed no FBAR forms for the succeeding 2014 and 2015 tax years.

Moreover, Defendant's failure to file the FBARs for those years was willful. This court has construed willfulness in the civil context to include knowing and reckless violations. *See United States v. Ott*, 441 F. Supp. 3d 521, 527-29 (E.D.

8

Mich. 2020); *see also United States v. Sturman*, 951 F.2d 1466, 1475 (6th Cir. 1991). A taxpayer is reckless as to his FBAR requirement if he "(1) clearly ought to have known that (2) there was a grave risk that the filing requirement was not being met and if (3) he was in a position to find out for certain very easily." *Ott*, 441 F. Supp. 3d at 528 (quoting *Bedrosian v. United States of America*, 912 F.3d 144, 153 (3d Cir. 2018)).

This is an objective, totality-of-the circumstances standard, and often relies on "circumstantial evidence and reasonable inferences drawn from the facts because direct proof of the taxpayer's intent is rarely available." *Id*. at 529 (quoting *United States v. McBride*, 908 F. Supp. 2d 1186, 1205 (D. Utah 2012)). The court may draw such inferences from "conduct meant to conceal or mislead sources of income or other financial information." *Id*.; *see also United States v. Rum*, No. 8:17-cf-826-T-35AEP, 2019 U.S. Dist. LEXIS 145931 (M.D. Fla. Aug. 2, 2019) (opening a "numbered" rather than a "name account" and electing to have mail withheld contributed to "a pattern of conscious efforts to conceal and avoid learning about the FBAR requirement."); *Norman v. United States*, 942 F.3d 1111, 1116 (Fed. Cir. 2019) (opening a numbered account had "the effect of inhibiting disclosure of the account to the IRS").

In this case, the evidence reveals that Defendant was aware of the requirement to file FBARs for years 2013 through 2015 no later than November of

9

2013 when Finter Bank expressly notified him of the FBAR obligations. Defendant's participation in the OVDP and filing of the delinquent FBARs further evidence that he was on notice of his obligation to file FBARs for any year he had a reportable foreign bank account.

Other indicia of concealment include the fact Defendant opened a numbered account with Finter Bank, which protected the account from discovery, and he arranged for the bank to hold any mail associated with that account. This is the same type of behavior another court has found to suggest "a pattern of conscious efforts to conceal and avoid learning about the FBAR requirement." *Rum*, 2019 U.S. Dist. LEXIS 145931, at *8. Finally, when Finter Bank ended its relationship with Defendant, he moved the funds to yet another numbered foreign bank account. For all of these reasons, the Government has a strong likelihood of succeeding on the merits of it claim.

### D. Irreparable Harm

The critical inquiry in issuing a TRO is that of irreparable harm. *See Lucero v. Detroit Public Schools*, 160 F. Supp. 2d 767, 801 (E.D. Mich. 2001). Irreparable harm is that which "cannot be compensated after the fact with money damages." *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003) (quoting *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000).

In a suit for money damages, difficulty in collecting an eventual judgment can support finding irreparable harm. *See Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986). The Sixth Circuit has recognized that the strong likelihood that a judgment-debtor would thwart collection efforts through the "concealment and dissipation of assets" can establish irreparable harm. *McGirr v. Rehme*, 891 F.3d 603, 613–14 (6th Cir. 2018); *see also Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 628 (6th Cir. 2013) (affirming an asset-freezing injunction where defendant's "questionable financial transactions" foreshadowed a fraudulent dissipation of assets).

Courts have found a person's pattern or history of concealing or fraudulently transferring assets suggests that person would follow the same pattern absent injunctive relief. *See Jet Midwest Int'l Co., Ltd v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1046 (8th Cir. 2020) ("[O]ther courts have also found irreparable harm where a debtor conceals assets from its creditor."); *see also First Nat'l City Bank*, 379 U.S. at 385 ("The temporary injunction issued by the District Court seems to us to be eminently appropriate to prevent further dissipation of assets.").

In this case, the Government will be irreparably harmed absent an order restraining Defendant from disposing of his foreign assets. Defendant has already taken substantial steps to judgment-proof himself domestically, and there is a strong likelihood that he will dissipate or transfer assets soon after learning of this

11

lawsuit. When Defendant fled the country in 2008, he brought with him his substantial assets that he had earned as an anesthesiologist—which he had failed to report as taxable income—and hid that money away in his undisclosed Finter Account. The Government was unaware of Defendant's foreign bank account until Finter Bank disclosed information relating to his account in 2014.

The Court denotes Defendant also successfully concealed his foreign bank account from the district judge when he faced a $250,000 fine as part of his criminal sentence. At the sentencing hearing, this district judge "waive[d] the imposition of a fine because of [Defendant's] inability to pay." *United States v. Kelly*, No. 2:08-CR-20316-DML-RSW, Dkt. 19 at 42:5–9 (E.D. Mich. Dec. 16, 2008). Unbeknownst to the district judge, however, Defendant was then and is now a millionaire who could easily afford a $250,000 fine in 2008, as well as the eventual judgment in this case.

Defendant's behavior—past and present—strongly indicates that he will make every effort to thwart the Government's efforts to collect in this case. For years, Defendant has consistently represented himself as a man of almost no assets. When he was earning significant sums as an anesthesiologist, he used nominees to shield those assets from creditors, including the Government. Since 2008, Defendant has maintained and failed to report his substantial assets offshore.

Despite his ownership of the Bank Alpinum Account since 2016, he has not

12

filed any FBARs or otherwise disclosed those accounts (or the interest earned thereon) to the IRS. Moreover, Defendant's history of having his checks made payable to fictitious-corporations and nominees suggests that, even if he does have domestic assets, they are not in his name and are therefore untraceable to him.

Where, as here, a defendant has a significant history of asset concealment outside of the court's jurisdiction, a likely judgment-creditor should not be thwarted from collecting a future judgment because of that defendant's deliberate conduct. *See McGirr*, 891 F.3d at 613–14. If Defendant is not restrained, there is a substantial risk he will further shield his only known assets, rendering any judgment obtained by the Government meaningless.

Finally, the fact Defendant's assets are outside of this Court's personal jurisdiction does not limit this Court's power over Defendant himself. *See First Nat'l City Bank*, 379 U.S. at 385. Therefore, because of the threat of irreparable harm to the Government's eventual collection efforts, this factor also favors entry of a temporary restraining order to preserve the status quo.

### E. Balance of Hardships

The risk that Defendant will improperly transfer assets outweighs the minimal harm Defendant may face by the entry of a temporary restraining order. If Defendant dissipates or transfers assets from the Bank Alpinum Account, the Government may never be able to collect its judgment. Meanwhile, the harm to

Defendant is minimal. The temporary restraining order cannot initially last more than 14 days, *see* Fed. R. Civ. P. 65(b)(2), so the present restrictions will be limited in time, and Defendant will be given an opportunity to respond to the Government's anticipated Motion for Preliminary Injunction. Moreover, the Government is only seeking to restrain Defendant from transferring or dissipating funds up to the amount of the FBAR assessment against him. Finally, there is little risk of harm to other parties, as Defendant is the sole owner of the Bank Alpinum Account. Based on these considerations, the Court concludes the balance of equities weigh in favor of the Government and granting a temporary restraining order.

### F. Public Interest

Finally, enhancing the likelihood that a federal debt will be collected serves the public interest. In passing the Bank Secrecy Act and its FBAR provisions, Congress recognized that the use of "secret foreign bank accounts" was the "largest single tax loophole permitted by American law," causing the "debilitating effect[]" of "hundreds of millions" of dollars in lost tax revenues. H. REP. NO. 91–975, at 12–13 (1970). FBAR penalties are an important tax enforcement mechanism, acting "as a safeguard for the protection of revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from [a] taxpayer's fraud." *United States v. Est. of Schoenfeld*, 344 F. Supp. 3d 1354,

1372 (M.D. Fla. 2018) (quoting *Helvering v. Mitchell*, 303 U.S. 391, 401 (1938)); *see also Bedrosian*, 912 F.3d at 151 ("Our take is the FBAR statute is part of the IRS's machinery for the collection of taxes . . . .").

A temporary restraining order meant to enforce payment of FBAR penalties therefore serves the public interest, as well as the "fair administration of the internal revenue laws." *United States v. RaPower-3, LLC*, 325 F. Supp. 3d 1237, 1250 (D. Utah 2018); *see also* H. REP. NO. 91–975, at 12–13 ("One of the most debilitating effects of an American's use of secret foreign financial facilities is its undermining of the fairness of our tax laws."). This factor likewise favors entry of a temporary restraining order.

### IV. CONCLUSION

Accordingly, for the reasons articulated above, the Government's *Ex Parte* Motion for a Temporary Restraining Order Regarding Funds and Assets Owned by James J. Kelly [#3] is GRANTED.

Effective November 3, 2021, IT IS ORDERED that until further order of the Court, the assets of Bank Alpinum are hereby frozen, up to the amount of the judgment sought in this case, $872,378.54, plus an additional $103,252.54 representing additional statutory additions which may accrue while this matter is pending.

IT IS FURTHER ORDERED that until further order of this Court, Defendant—as well as anyone acting on his behalf or in concert or participation with him—is ENJOINED from directly or indirectly encumbering, liquidating, transferring, or otherwise spending or disposing of the assets of Bank Alpinum, up to the judgment sought in this case, $872,378.54, plus an additional $103,252.54 representing additional statutory additions which may accrue while this matter is pending.

IT IS FURTHER ORDERED that the Government file a Motion for Preliminary Injunction no later than November 4, 2021 at noon.

Defendant shall file a Response to the Government's Motion for Preliminary Injunction no later than November 10, 2021 at noon.

The Government may file a Reply no later than November 12, 2021 at 5:00 p.m.

A hearing on the Government's Motion for Preliminary Injunction will be held on November 15, 2021 at 4:00 p.m.

IT IS FURTHER ORDERED that the Government serve all papers in this case, including a copy of the temporary restraining order, on Defendant <u>no later than November 4, 2021 at noon</u> and file a Certificate of Service on CM/ECF evidencing same.

Dated: November 3, 2021 /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record and on November 3, 2021, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager