IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 2:21-cv-12570 |
| Plaintiff, | ) | |
| | ) | Hon. Gershwin A. Drain |
| v. | ) | |
| | ) | |
| JAMES J. KELLY, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## UNITED STATES' MOTION FOR A PRELIMINARY INJUNCTION REGARDING FUNDS AND ASSETS OWNED BY JAMES J. KELLY, JR.

Plaintiff United States of America files this Motion for a Preliminary Injunction against James J. Kelly, Jr. ("Kelly"), pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, seeking a freeze on Kelly's foreign bank account and a periodic accounting (to ensure his compliance), for the duration of this litigation.

The United States has filed a complaint seeking to reduce to judgment an assessment the IRS made against Kelly for his willful failure to report his financial interest in a foreign bank account during 2013, 2014, and 2015. The complaint seeks a judgment of $872,378.54, plus continuing statutory accruals from October 1, 2021.

Kelly's only known asset capable of satisfying the judgment sought are the funds held in his account at Bank Alpinum in Liechtenstein, from which it appears that he has already withdrawn significant amounts over the years. The United States seeks an injunction prohibiting Kelly from withdrawing, transferring, disposing of, or otherwise dissipating, and from asking, instructing, or directing any other person from withdrawing, transferring, disposing of, or otherwise dissipating, funds held in this account, up to the amount of the judgment sought against him, plus any interest that may accrue before that debt is paid. The United States also requests that the Court order Kelly to submit an accounting identifying all transfers into and out of the account between November 1 and November 15, 2021, and to submit a quarterly accounting of the account balance to the Court.

Pursuant to Local Civil Rule 7.1(d), a brief in support of this Motion is attached. The declaration of IRS Territory Manager Erik Anderson, filed at PageID.50-61, is incorporated by reference.

Pursuant to Local Civil Rule 65.1, the undersigned counsel attempted to reach Mr. Kelly for a concurrence in the relief sought under Local Rule 7.1(a) and advises that despite reasonable efforts, Mr. Kelly did not return the undersigned counsel's phone call as of the time of filing.

2

**For the United States of America, plaintiff**

DAVID A. HUBBERT
Acting Assistant Attorney General
Tax Division, U.S. Department of
Justice

*/s/ Mary A. Stallings*
MARY A. STALLINGS
SAMANTHA S. PRIMEAUX
Trial Attorneys
Tax Division, Department of Justice
P.O. Box 55
Washington, D.C.  20044
Telephone:   (202) 616-2604
Fax:            (202) 514-5238
Mary.A.Stallings@usdoj.gov
Samantha.S.Primeaux@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered parties.

I further certify that on November 4, 2021, the foregoing document was served by U.S. Mail, postage prepaid and by FedEx to the following:

James J. Kelly, Jr.
2168 Highbury Drive
Troy, Michigan, 48085

_/s/ Mary A. Stallings_
MARY A. STALLINGS
Trial Attorney
United States Department of Justice,
Tax Division

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,   )

   )   Case No. 2:21-cv-12570

Plaintiff,   )

   )   Hon. Gershwin A. Drain

v.   )

   )

JAMES J. KELLY, JR.,   )

   )

Defendant.   )

_____)

**BRIEF IN SUPPORT OF THE UNITED STATES' MOTION FOR A
PRELIMINARY INJUNCTION REGARDING FUNDS AND ASSETS
OWNED BY JAMES J. KELLY, JR.**

On November 3, 2021, this Court entered an Amended Order Granting

Motion for a Temporary Restraining Order freezing assets of Defendant James J.

Kelly, Jr. PageID.91. The United States now seeks a preliminary injunction for the

duration of this case, prohibiting James J. Kelly, Jr. from withdrawing,

transferring, disposing of, or otherwise dissipating, and from asking, instructing, or

directing any other person from withdrawing, transferring, disposing of, or

otherwise dissipating, funds held in his Bank Alpinum account in Liechtenstein, up

to the amount of the judgment sought against him, plus any interest that may

accrue before that debt is paid. To ensure Kelly's compliance with the TRO and

any preliminary injunction entered, the United States also requests that the Court

order Kelly to submit an accounting of the funds maintained in the Bank Alpinum Account identifying all transfers into and out of the Bank Alpinum Account between November 1, 2021 and November 15, 2021, and to submit a quarterly accounting of the account balance to the Court together with the corresponding bank statements reflecting the account balance.

## <u>ISSUE PRESENTED</u>

Whether, in an action to reduce a Defendant's willful FBAR penalties to judgment, the Court may issue a preliminary injunction placing restrictions on the ability of the Defendant to dispose of or dissipate the funds in his foreign account for the duration of the litigation, where the Defendant has a history and pattern of concealing and dissipating his assets to evade lawful debts.

## CONTROLLING AUTHORITIES

The controlling, or otherwise most useful authorities are:  31 U.S.C. § 5321, *et seq.*; *McGirr v. Rehme*, 891 F.3d 603 (6th Cir. 2018); *Findlay Truck Line, Inc. v. Central States, Southeast & Southwest Areas Pension Fund*, 726 F.3d 738, 746 (6th Cir. 2013); *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641 (6th Cir. 1993); and *United States v. First Nat'l City Bank*, 379 U.S. 378 (1965).

## INTRODUCTION

The United States of America brings this case to reduce to judgment willful FBAR penalties that the Internal Revenue Service ("IRS") assessed against the Defendant, James J. Kelly, Jr. for tax years 2013, 2014, and 2015.  The Secretary of the Treasury is empowered by the Bank Secrecy Act to require U.S. persons to file a Foreign Bank Account Report ("FBAR") if they maintain control over certain foreign bank accounts.  31 U.S.C. §§ 5321 *et seq.*  An American's failure to report is subject to civil penalties, which are greater if the violation is willful.  *See* § 5321(a)(5)(B)–(D).

As explained below, Kelly has a long history both of concealing his assets from the United States in overseas accounts and in not holding domestic assets in his own name – a pattern he continues to this day.  Kelly's only known asset is a foreign bank account, from which he has withdrawn significant amounts over the

years.  The United States therefore requests a preliminary injunction freezing

Kelly's financial status-quo to prevent him from dissipating his assets overseas.

## FACTS

1.      James J. Kelly, Jr. worked as an anesthesiologist in various hospitals

around Michigan until he lost his license in 2008. Anderson Decl. ¶ 8 (*See*

PageID.50-73, hereinafter "Anderson Decl.").  For tax years 1999 through 2007,

Kelly failed to timely file federal income tax returns for the income he earned from

his work as an anesthesiologist. Anderson Decl. ¶ 8.   He was assessed over

$3,000,000 in income tax liabilities, penalties, and interest for those years.

Anderson Decl. ¶ 10.  In tax year 2001, Kelly reported 1099 or W-2 withholdings

of $40,538. Anderson Decl. ¶ 11. In 2002, Kelly reported withholdings of $2,313.

Anderson Decl. ¶ 10.

2.      Between 2004 and 2007, Kelly instructed his employers and payors to

make his paychecks payable to various nominees and fictitious entities.  Anderson

Decl. ¶ 12.  For example, Kelly directed payors to make his paychecks out to: (1)

"Gas & Tubes, Inc." from January 2004 until June 2005; (2) "SAS, Inc." from

October 2005 to March 2007; and (3) "Celson, Inc." in March 2007.   Anderson

Decl. ¶ 12.  None of these entities exist.  *Id.*

3.      Most of Kelly's paychecks were signed by his mother and were

deposited into domestic bank accounts titled in her name.  Anderson Decl. ¶ 13.

4.      In November 2007, criminal investigators executed a search warrant on Kelly's residence in Michigan.  Anderson Decl. ¶ 17.

5.      In February 2008, Kelly fled the United States to avoid criminal prosecution in a non-tax related matter.  Anderson Decl. ¶ 18.

6.      Kelly brought with him $1,854,463.43 divided between seven cashier's checks when he fled.  Anderson Decl. ¶ 19.  In February 2008, Kelly opened a numbered bank account ending in 73019 with Finter Bank in Zürich, Switzerland ("Finter Account").  *Id.*  He was listed as the account signatory and the beneficial owner in the Finter Account's opening documents.  *Id.*  Kelly requested that Finter Bank not mail him any correspondence related to the Finter Account, but rather to hold it in his file at the bank.  Anderson Decl. ¶ 23.

7.      When Kelly opened the Finter Account, he claimed that he had a total of $3,000,000 in assets, and falsely claimed to the bank that he was divorcing his wife and had closed his U.S. accounts to protect his wealth.  Anderson Decl. ¶ 20. He also told the bank that he wanted to invest all his savings and revenues from his medical practice, in Switzerland.  Anderson Decl. ¶ 20.  After opening the account, Kelly made an additional deposit of $90,000 in March 2008, but he withdrew $400,000 from the account in April 2008 related to "an unexpected custody issue." Anderson Decl. ¶ 24.

8.      Kelly refused to file a Form W-9 with Finter Bank, an IRS form containing identifying information about a taxpayer that a bank uses to report their customer's earned interest income to the IRS.  Anderson Decl. ¶¶ 21-22.

9.      Kelly was arrested in Portugal on April 23, 2008 after attempting to secure a new passport and was extradited back to the United States to face prosecution.  Anderson Decl. ¶ 25.

10.     Kelly pleaded guilty to federal criminal charges against him, and as part of his plea agreement faced a possible fine of $250,000 per count.  *United States v. Kelly*, No. 2:08-CR-20316-DML-RSW, PageID.39.  At his criminal sentencing on December 16, 2008, the Court "waive[d] the imposition of [the] fine because of [Kelly's] inability to pay."  *Id*., PageID.166, lines 8-9.  Kelly was released from prison in December 2010.  Anderson Decl. ¶ 25.

11.     In July 2011, Kelly falsely told Finter Bank that his ex-wife had learned of the Finter Account and notified the IRS, and he asked whether the bank would respond to the IRS's requests for information.  Anderson Decl. ¶ 26.

12.     In November 2013, Finter Bank informed Kelly that it was considering participating in the U.S. Department of Justice Tax Division's Swiss Bank Program.  Anderson Decl. ¶ 30.  By letter dated December 23, 2013, Finter Bank informed Kelly that it intended to disclose his account to U.S. authorities.  Anderson Decl. ¶ 31.  Finter Bank wanted Kelly to submit proof of his compliance

7

with U.S. tax laws, including FBAR forms he should have been filing for all years he had the Finter Account.  Anderson Decl. ¶ 32.  Finter Bank advised Kelly that, if he had not reported the account, he should consider participating in the IRS's Offshore Voluntary Disclosure Program ("OVDP").  *Id.*

13.     On April 1, 2015, the IRS preliminarily accepted Kelly into the OVDP after he submitted a Form 14457 Offshore Voluntary Disclosure Letter to the IRS in March 2015.  Anderson Decl. ¶¶ 33-34.  As part of the application to the OVDP, Kelly disclosed the existence of the Finter Account, that he was the sole owner, that he had opened it in 2008, and that he had closed it in June 2015.  *Id.* In December 2016, he filed delinquent FBARS for years 2008 through 2013 but failed to file FBARS for any subsequent years. Anderson Decl. ¶¶ 35, 41.

14.     In December 2015, Kelly instructed Finter Bank through his representative to close the Finter Account and transfer the balance to Golden Eagle Services, an asset management company, in the care of an Emanuel Agustoni, for eventual deposit with Bank Alpinum AG in Vaduz, Liechtenstein.  Anderson Decl. ¶ 27.  Agustoni was indicted in 2011 for conspiring to defraud the United States by helping U.S. citizens open undeclared, overseas accounts and evade income taxes. Anderson Decl. ¶ 28. *See United States v. Adami*, *et al.,* Case No. 1:11-cr-95 (E.D. Va.).

15.     Kelly opened an account ending in 1392 at Bank Alpinum AG ("Bank Alpinum Account") in 2016 with the help of Agustoni and Golden Eagle Services, into which he deposited the funds from the Finter Account.  Anderson Decl. ¶ 28. In 2016, the Bank Alpinum Account had a balance of $1,492,773.  *Id.* Kelly has maintained the Bank Alpinum Account through at least 2020.  Anderson Decl. ¶ 29.  As of 2020 the balance in the Bank Alpinum Account was $1,100,276.95. *Id*.

16.     In 2018, Clearstream Banking, SA Luxembourg reported a 1099-INT showing $32,472 in interest income and a 1099-DIV showing $4,800 in dividend income, both to Kelly, through InCore Bank AG Switzerland.  Anderson Decl. ¶ 42.  No domestic banks have submitted any such forms for Kelly between 2015 and 2020.  Anderson Decl. ¶ 44.

17.     On February 8, 2018, after inquiring about entering an installment payment plan, Kelly signed under penalty of perjury and submitted to the IRS a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals.  Anderson Decl. ¶ 39.  Kelly disclosed a domestic checking account with a balance of $663.34; monthly gross income from his work at a local grocery store of $1,040.00; monthly expenses of $800.33; and monthly net income of $239.67.  Anderson Decl. ¶ 40.

18.     Kelly did not disclose on the Form 433-A the Bank Alpinum Account or InCore Bank AG Switzerland accounts, and he has never explained to the IRS where the funds from his Finter Account went after it was closed in 2015. Anderson Decl. ¶ 40.

19.     Taxpayers seeking to participate in the OVDP are obligated to cooperate with the IRS.  Anderson Decl. ¶ 36.  Despite this, Kelly failed to comply with the IRS's requests for information.  *Id.*

20.     In 2018, the IRS removed Kelly from the OVDP for his lack of cooperation.  Anderson Decl. ¶ 37.  After his removal, Kelly did not respond to IRS examination letters or Information Document Requests, and he failed to appear at scheduled interviews.  Anderson Decl. ¶ 38.

21.     On November 1, 2019, the Secretary of the Treasury assessed willful FBAR penalties totaling $769,126 against Kelly for tax years 2013, 2014, and 2015.  Anderson Decl. ¶ 6.  Despite notice and demand, Kelly has paid no portion of his assessments, and as of October 1, 2021, he owes $872,378.54 in FBAR penalties, interest, and other statutory additions.  Anderson Decl. ¶ 6.  For the two years since the assessment, the statutory accruals and interest have totaled $103,252.54 and continue to accrue. Anderson Decl. ¶ 7.

## JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355(a).  Venue is proper under 28 U.S.C. § 1391(b) because James J. Kelly, Jr. is a resident of Troy, Michigan.

## LEGAL STANDARD

In deciding whether to issue preliminary injunction, a district court must weigh the following factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction."  *Am. Civil Liberties Union Fund of Mich. v. Livingston Cty.*, 796 F.3d 636, 642 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1246 (2016) (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012)).  The moving party bears the burden of justifying the relief sought. *Wilson v. Williams*, 961 F.3d 829, 837 (6th Cir. 2020). The court may exercise its personal jurisdiction over a defendant to freeze assets to prevent their dissipation, even where the situs of the defendant's property is overseas.  *United States v. First Nat'l City Bank*, 379 U.S. 378, 385 (1965) ("Once personal jurisdiction of a party is obtained, the District Court has authority to order it to 'freeze' property under its control whether the property be within or without the United States.")

11

Preliminary injunctions come in two forms: prohibitory and mandatory. A prohibitory injunction "freezes the positions of the parties until the court can hear the case on the merits." *Heckler v. Lopez*, 463 U.S. 1328, 1333 (1983). A mandatory injunction, by contrast, orders a party to "take action." *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996).

"As a general matter, federal courts have the power to issue preliminary injunctions pursuant to Federal Rule of Civil Procedure 65 and the court's equitable powers." *Findlay Truck Line, Inc. v. Central States, Southeast & Southwest Areas Pension Fund*, 726 F.3d 738, 746 (6th Cir. 2013); *see also Levi Strauss & Co. v. Sunrise Intern Trading, Inc*. 51 F.3d 982, 987 (11th Cir. 1995) ("A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief.")

## **ARGUMENT**

I. **The United States has a strong likelihood of success on the merits of its claim.**

### A. The United States can prove that Defendant willfully failed to file FBARs for tax years 2013, 2014, and 2015.

The Bank Secrecy Act authorizes the Secretary of the Treasury to require U.S. citizens to report when they "make[] a transaction or maintain[] a relation for any person with a foreign financial agency."  31 U.S.C. § 5314(a).  Under the

implementing regulations, any U.S. person "having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country . . ." must file a Report of Foreign Bank and Financial Accounts ("FBAR") disclosing that interest for each year it exists. 31 C.F.R. § 1010.350(a), (c).  For calendar years 2013, 2014, and 2015, an FBAR was due by June 30th "of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year."  31 C.F.R. §1010.306(c). A non-willful violation could result in a $10,000 civil penalty, but a willful violation of the FBAR requirement increases that penalty to the greater of $100,000 or 50% of the aggregate account balances for each violation.  § 5321(a)(5)(B)–(D).  Although not defined in Title 31 or the regulations, courts have defined willfulness in the civil context to include both knowing and reckless violations.  *United States v. Ott*, 441 F. Supp. 3d 521, 527-29 (E.D. Mich. 2020); *see also United States v. Sturman*, 951 F.2d 1466, 1475 (6th Cir. 1991).

A taxpayer is reckless as to his FBAR requirement if he "(1) clearly ought to have known that (2) there was a grave risk that the filing requirement was not being met and if (3) he was in a position to find out for certain very easily."  *Id.* at 528 (quoting *Bedrosian v. United States.*, 912 F.3d 144, 153 (3d Cir. 2018)).  This is an objective, totality-of-the-circumstances standard, and often relies on "circumstantial evidence and reasonable inferences drawn from the facts because

direct proof of the taxpayer's intent is rarely available." *Ott*, 441 F. Supp. 3d at 529 (quoting *United States v. McBride*, 908 F. Supp. 2d 1186, 1205 (D. Utah)). The court may draw such inferences from "conduct meant to conceal or mislead sources of income or other financial information." *Id.*; *see also United States v. Rum*, 2019 WL 3943250, at *8 (M.D. Fla. Aug. 2, 2019) (hold mail and numbered account contributed to "a pattern of conscious efforts to conceal and avoid learning about the FBAR reporting requirement."); *Norman v. United States*, 942 F.3d 1111, 1116 (Fed. Cir. 2019) (opening a numbered account had "the effect of inhibiting disclosure of the account to the IRS").

To succeed on the merits in this case, the United States must prove that: (1) Kelly was a citizen, resident, or person doing business in the United States during 2013, 2014, and 2015; (2) Kelly "had a financial interest in, or signatory or other authority over, a bank, securities or other account" during those years; (3) the account had a balance of $10,000 or more during those years; (4) the account was in a foreign country; (5) Kelly failed to disclose the account to the IRS by June 30 of 2014, 2015, and 2016; (6) the failure to report the account was willful; and (7) the penalty was proper. *See United States v. Hawker*, No. 2:19-CV-836 TS, 2021 WL 288566, at *2 (D. Utah Jan. 28, 2021) (citing *McBride*, 908 F. Supp. 2d at 1201); *see also United States v. Bohanec*, 263 F. Supp. 3d 881, 888–89 (C.D. Cal. 2016).

The facts stated above establish that the United States has a strong likelihood of prevailing on its claim that Kelly willfully failed to file FBARs for the years at issue.  Kelly is a U.S. citizen and a resident of Troy, Michigan, and his financial interest in his Finter Bank Account in Switzerland began in February 2008 after he fled the United States.  Kelly held signatory and beneficiary control over that account until 2015, when he moved the funds to Bank Alpinum in Liechtenstein, where they remain today.  He therefore was a U.S. person with a financial interest or signatory control over a bank account located in a foreign country for tax years 2013 through 2015. The Finter Account held well over a million dollars for each tax year in question, so the balances exceeded $10,000 for years 2013, 2014, and 2015.  Kelly failed to timely file an FBAR form for 2013 and filed no FBAR forms for 2014 and 2015 and succeeding years.

Moreover, Kelly's failure to file FBARs for those years was willful, triggering the higher penalty under the statute.  *See* § 5321(a)(5)(B)–(D).  He was aware of his requirement to file FBARs for years 2013 through 2015 no later than December 2013 when Finter Bank expressly notified him of the FBAR obligations, at a time when he could still have timely filed an FBAR for 2013, on June 30, 2014.   Indeed, Kelly was likely aware far earlier than December 2013 that he was required to report his foreign bank account to the IRS:  when he opened the account with Finter Bank in February 2008, he refused to fill out a Form W-9,

15

which would have alerted the IRS to the existence of the account.  And in July 2011 he falsely claimed to Finter Bank that his wife had alerted the IRS to the existence of the account and inquired whether the bank would be responding to any IRS inquiries.  That is, from 2008 on, he was deliberately attempting to conceal the existence of the Finter Account from the IRS.

Kelly's participation in OVDP and filing the delinquent FBARs, further put him on notice of obligation to file FBARs for any year where he had a reportable foreign banking relationship.  He knew of the grave risk that he was not meeting his FBAR obligation for years 2013, 2014, and 2015 because he selectively filed only years 2008 through 2013 — despite controlling the Finter Bank account until 2015, the Bank Alpinum account from 2016 to today, and the InCore Bank AG Switzerland account during at least 2018.

Finally, the indicia of fraud and concealment that support an inference of willfulness are strong in Kelly's case.  First, the circumstances under which he created his Finter Account show his intent to hide his wealth from U.S. authorities. When he fled prosecution in Michigan in February 2008, he brought with him over $1.8 million in cashier's checks – money that he represented to Finter Bank was his earnings as a medical doctor.  Second, as is common in FBAR penalty cases, he opened a numbered account with Finter Bank, which protected his account from disclosure, and he arranged for Finter Bank to hold any mail associated with that

16

account number.  This is exactly the sort of behavior that courts have found to suggest "a pattern of conscious efforts to conceal and avoid learning about the FBAR reporting requirement."  *Rum*, 2019 WL 3943250, at *8.  And third, when Finter Bank ended that relationship, Kelly moved his wealth to yet another foreign account, at Bank Alpinum in Liechtenstein, to further conceal his assets.

In short, for all the reasons explained above, the United States has a strong likelihood of succeeding on the merits of showing that Kelly owes a substantial, lawful debt to the United States, all as a result of his moving assets overseas to a secret foreign account.  As will be shown below, the threat of Kelly further dissipating his assets outside of the Court's jurisdiction is strong, and so it is appropriate for this Court to freeze Kelly's financial assets to preserve the status quo pending the resolution of this case.

## II.     The significant risk of Kelly dissipating or transferring his foreign assets causes the United States an irreparable injury

The critical inquiry in issuing a preliminary injunction is that of irreparable harm.  *See Lucero v. Detroit Public Schools*, 160 F. Supp. 2d 767, 801 (E.D. Mich. 2001).  Irreparable harm is that which "cannot be compensated after the fact with money damages."  *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003) (quoting *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000).

In a suit for money damages, difficulty in collecting an eventual judgment may support finding irreparable harm. *See Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986). The Sixth Circuit has recognized that the strong likelihood that a judgment-debtor would thwart collection efforts through the "concealment and dissipation of assets" can establish irreparable harm. *McGirr v. Rehme*, 891 F.3d 603, 613–14 (6th Cir. 2018); *see also Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 628 (6th Cir. 2013) (affirming an asset-freezing injunction where defendant's "questionable financial transactions" foreshadowed a fraudulent dissipation of assets). Irreparable harm must also be non-speculative. *Lucero*, 160 F. Supp. 2d at 801. Courts have found that a person's pattern or history of concealing or fraudulently transferring assets indicates that that person would follow the same pattern absent injunctive relief. *See Jet Midwest Int'l Co., Ltd v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1046 (8th Cir. 2020) ("[O]ther courts have also found irreparable harm where a debtor conceals assets from its creditor."); *see also First Nat'l City Bank*, 379 U.S. at 385 ("The temporary injunction issued by the District Court seems to us to be eminently appropriate to prevent further dissipation of assets.").

The United States will be irreparably harmed absent an order enjoining Kelly from disposing of his foreign assets because he has already taken substantial steps to judgment-proof himself domestically, and there is a strong likelihood that

Kelly will dissipate or transfer assets soon after learning of this lawsuit.  When Kelly fled the country in 2008, he brought with him his substantial assets that he had earned as an anesthesiologist— which he had failed to report as taxable income and from which he had failed to have sufficient withholdings made to satisfy his income tax liabilities—and hid that money away in his undisclosed Finter Account.  U.S. authorities remained in-the-dark about Kelly's foreign wealth until Finter Bank disclosed information relating to his account to the IRS in 2014.

Kelly also successfully concealed his foreign bank account from the Court when he faced a $250,000 fine as part of his criminal sentence.  At the sentencing hearing, this Court "waive[d] the imposition of a fine because of [Kelly's] inability to pay." *United States v. Kelly*, No. 2:08-CR-20316-DML-RSW, Dkt. 19 at 42:5–9 (E.D. Mich. Dec. 16, 2008).  Unbeknownst to the Court, however, Kelly was then and is now a millionaire who could easily afford a $250,000 fine in 2008, as well as the eventual judgment in this case.

Kelly's behavior—past and present—strongly indicates that he will make every effort to thwart the government's efforts to collect in this case. For years, Kelly has consistently represented himself as a man of almost no assets.  When he was earning significant sums as an anesthesiologist, he used nominees to shield those assets from creditors, including the United States.  Since 2008, Kelly has maintained and failed to report his substantial assets offshore. Despite his

19

ownership of the Bank Alpinum Account since 2016, he has not filed any FBARs or otherwise disclosed those accounts (or the interest earned thereon) to the IRS. He likewise failed to disclose his interest in another foreign account at InCore Bank AG, Switzerland, or report on his 2018 tax return the $32,472 in interest income and $4,800 in dividend income he received.[1]   Moreover, Kelly's history of having his checks made payable to fictitious-corporations and nominees suggests that, even if he does have domestic assets, they are not in his name and are therefore untraceable to him.  This pattern continues today:  Between 2015 and 2020, Kelly has received W-2 income but does not appear to maintain any domestic bank accounts in his name.

Where, as here, a defendant like Kelly has such a strong history of fraud and concealment of assets outside of a court's jurisdiction, a likely judgment-creditor should not be thwarted from collecting a future judgment because of that defendant's deliberate conduct.  *See McGirr*, 891 F.3d at 613–14.  The harm caused by Kelly's further concealment will be irreparable because not even a damages award will compensate the United States.  Kelly has already rendered himself judgment-proof to thwart collection as a prophylactic measure.  Thus, if he is not enjoined by this Court with respect to the Bank Alpinum Account, there is a

---

[1] The current balance or whereabouts of the funds in the Clearstream Banking account are unknown to the government but the reported interest suggests that the amount is substantial.

substantial risk that he will further shield his only known assets, rendering any judgment obtained by the United States meaningless.

And just because Kelly's assets are outside of this Court's personal jurisdiction in the instant case does not limit this Court's power to exercise in personam jurisdiction over Kelly *himself.  See First Nat'l City Bank*, 379 U.S. at 385.  Therefore, because of the threat of irreparable harm to the United States' eventual collection efforts, this Court should exercise its personal jurisdiction over Kelly and issue a preliminary injunction to preserve the status quo.

### III.    The risk of improper dissipation or transfer of the foreign assets outweighs any minimal harm to Mr. Kelly

The balance of equities tips in the United States' favor. Between 2016 and 2020, Kelly has drawn nearly $400,000 on the Bank Alpinum Account, which as of last year had a balance of $1.1 million.  Kelly has no other known assets, so if he further dissipates or transfers assets from the Bank Alpinum Account or other foreign accounts, the United States may never be able to collect its judgment. Meanwhile, the harm to Kelly is minimal. The United States is only seeking to enjoin Kelly from transferring or otherwise dissipating funds up to the amount of the FBAR assessment against him. Kelly would also have unfettered access to the nearly $30,000 he earns in annual wages from his employment which is easily sufficient to cover what he represented, in the 2018 Form 433-A he filled out with the IRS, were his approximately $9,600 in annual expenses. Finally, there is little

risk of harm to other parties as Kelly is the sole owner of the Bank Alpinum Account.

Balanced against the harm caused to the United States—specifically, that it will never see the money to which it eventually may be entitled through a successful judgment—the injury to Kelly would be minimal.  If this Court grants  a preliminary injunction, Kelly would be prohibited from accessing only a portion of his foreign-held wealth. Without the injunction, however, the United States would never see a dime of what Kelly owes, despite the strong likelihood that the government will succeed on the merits.  Therefore, the harm to Kelly would be minimal and the balance of equities weighs in favor of granting a preliminary injunction.

### IV.    Enhancing the likelihood of collecting a federal debt serves the public interest.

The FBAR requirement protects the public fisc.  In passing the Bank Secrecy Act and its FBAR provisions, 31 U.S.C. §§ 5321 *et seq.*, Congress recognized that the use of "secret foreign bank accounts" was the "largest single tax loophole permitted by American law," causing the "debilitating effect[]" of "hundreds of millions" of dollars in lost tax revenues.  H. REP. NO. 91–975, at 12–13 (1970).  Civil FBAR penalties are thus an important tax enforcement mechanism, acting "as a safeguard for the protection of revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from

22

[a] taxpayer's fraud." *United States v. Est. of Schoenfeld*, 344 F. Supp. 3d 1354, 1372 (M.D. Fla. 2018) (quoting *Helvering v. Mitchell*, 303 U.S. 391, 401 (1938)); *see also Bedrosian*, 912 F.3d at 151 ("Our take is the FBAR statute is part of the IRS's machinery for the collection of taxes . . . .").

A preliminary injunction meant to enforce payment of FBAR penalties would therefore serve the public interest, as well as the "fair administration of the internal revenue laws." *United States v. RaPower-3, LLC*, 325 F. Supp. 3d 1237, 1250 (D. Utah 2018); *see also* H. REP. NO. 91–975, at 12–13 ("One of the most debilitating effects of an American's use of secret foreign financial facilities is its undermining of the fairness of our tax laws.").  It would also be in the public interest because it is in the aid of collecting a federal debt.  Without this order, Kelly would be able to hinder enforcement of an eventual civil judgment against him in this case by dissipating the assets that he is holding overseas, just as he hindered the Court in his criminal case in 2008.

## V.    Kelly should be required to file with the Court an accounting of the funds maintained in the Bank Alpinum Account

To ensure Kelly's compliance with the temporary restraining order and any preliminary injunction, the United States requests that Kelly be required to submit to the Court (1) an accounting that identifies all transfers into and out of the Bank Alpinum Account between November 1, 2021 and November 15, 2021; and (2) a quarterly accounting of the funds in the Bank Alpinum Account ending 1392

accompanied by the corresponding bank statements issued by Bank Alpinum for

the account.  Absent an accounting, the United States has no way of knowing

whether Kelly is in compliance with the Court's orders or whether he transferred

the funds from his Bank Alpinum Account immediately after the complaint in this

matter was filed.[2]  Moreover, because the Bank Alpinum Account is located in

Liechtenstein, traditional third-party discovery tools are largely unavailable to the

government.

## **CONCLUSION**

Kelly has gone to great lengths to conceal his assets from the United States

and to thwart collection. The purpose of this lawsuit is to hold him responsible for

his unpaid liabilities.  The United States seeks a preliminary injunction so that

purpose is not defeated before the lawsuit can be litigated. In light of the

substantial risk that Kelly will, absent a grant of relief, direct the dissipation or

transfer of the assets meant to collect the liabilities, an order enjoining him from

withdrawing, transferring, disposing of, or otherwise dissipating, and from asking,

instructing, or directing any other person from withdrawing, transferring, disposing

of, or otherwise dissipating, funds held in his Bank Alpinum Account ending 1392,

---

[2] It appears that after the government filed its complaint, but before Kelly could be served with civil process, an online publication attempted to reach Kelly for comment about this lawsuit. *See* https://www.law360.com/tax-authority/articles/1436728 (last visited Nov. 3, 2021).

up to the amount of the assessment against him, plus an additional $103,252.54 for interest that may accrue during the pendency of this litigation, is appropriate. In addition, to ensure that this Court and the United States are able to monitor Kelly's compliance with a preliminary injunction, the United States also requests that the Court order Kelly to submit an accounting of the funds maintained at the Bank Alpinum Account by identifying all transfers into and out of the Bank Alpinum Account between November 1, 2021 and November 15, 2021, and by submitting to the Court a quarterly accounting of the funds in the Bank Alpinum Account ending 1392 accompanied by the corresponding bank statements issued by Bank Alpinum for the account.

Respectfully submitted,

DAVID A. HUBBERT
Acting Assistant Attorney General
Tax Division, U.S. Department of Justice

*/s/ Mary A. Stallings*
MARY A. STALLINGS
SAMANTHA S. PRIMEAUX
Trial Attorneys
Tax Division, Department of Justice
P.O. Box 55
Washington, D.C.  20044
Telephone:   (202) 616-2604
Fax:             (202) 514-5238
Mary.A.Stallings@usdoj.gov
Samantha.S.Primeaux@usdoj.gov