IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,               )
                                        )   Case No. 2:21-cv-12570
        Plaintiff,                      )
                                        )   Hon. Gershwin A. Drain
        v.                              )
                                        )
JAMES J. DEFENDANT KELLY, JR.,          )
                                        )
        Defendant.                      )
_____ )

**OPINION AND ORDER GRANTING PLAINTIFF UNITED STATES'
MOTION FOR SUMMARY JUDGMENT [#48], DENYING DEFENDANT
JAMES J. KELLY'S MOTION FOR SUMMARY JUDGMENT [#47],
CANCELLING HEARING AND SETTING STATUS CONFERENCE**

## I.    INTRODUCTION

The United States of America (hereinafter "the Government" or "the Plaintiff"), with the authorization of the Secretary of the Treasury, and at the direction of the Attorney General of the United States, brings this action against Defendant James J. Kelly, Jr. to collect the penalties, plus statutory additions, assessed under 31 U.S.C. § 5321(a)(5) against Defendant Kelly, for his willful failure to file a Report of Foreign Bank and Financial Accounts (hereinafter "FBAR") for the years 2013, 2014, and 2015 as required by 31 U.S.C. § 5314.

Presently before the Court is the Government's Motion for Summary Judgment and the Defendant's Motion for Summary Judgment. These matters are fully briefed. After considering the parties' briefing, supporting documentation,

and the applicable law, the Court finds that oral argument will not aid in the disposition of this matter. Accordingly, the Court will resolve the parties' motions for summary judgment on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). The Court concludes that no genuine issue of material fact exists as to whether Defendant Kelly willfully failed to file his FBARs, and therefore, the Court will grant summary judgment on Count I in favor of the Government and against the Defendant and will deny the Defendant's Motion for Summary Judgment.

## II.    FACTUAL BACKGROUND

Defendant Kelly is a United States citizen and was a United States citizen during the calendar years 2013, 2014, and 2015. Until 2008, Defendant Kelly was employed as a board-certified anesthesiologist at several Michigan area hospitals. He received his undergraduate and medical degrees from Wayne State University. Since at least 2013, he has lived with his sister and brother-in-law in Troy, Michigan.

For years 1999 through 2007, Defendant Kelly failed to timely file his federal income tax returns. Defendant Kelly filed delinquent income tax returns for the years 1999 through 2005, and 2007 in December 2008 after the IRS opened an audit examination. The IRS subsequently assessed over $3 million in unpaid federal income taxes, penalties, and interest, which the IRS later wrote off due to the expiration of the statute of limitations on collections.

2

In November 2007, law enforcement officials began investigating Defendant Kelly in regard to a non-tax related criminal matter.  *United States v. James* J. *Kelly, Jr.*, Case No. 2:08-cr-20316 (E.D. Mich.).  A search warrant was subsequently executed on Defendant Kelly's Michigan residence**.**  In early 2008, Defendant Kelly liquidated funds from and closed his domestic bank accounts. Shortly thereafter, in February 2008, Defendant Kelly travelled to Zurich, Switzerland and opened an account at Finter Bank, with an account number ending in 3019, ("Finter Account"), where he deposited $1,854,463.  The funds deposited were the earnings from his anesthesiology practice.  Defendant Kelly was the sole account signatory and beneficial owner of his Finter Account.  Defendant Kelly designated his Finter Account as a numbered account that would not bear his name on statements generated from the account.  Defendant Kelly also requested that Finter Bank retain all account related correspondence rather than have it sent to him at a designated address.

At the time he opened his Finter Account, he completed and signed a document titled "Tax Form U.S. Withholding/Individual."  The Tax Form U.S. Withholding document informed Defendant Kelly of his obligation to complete a Form W-9, Request for Taxpayer Identification Number and Certification, and of Finter Bank's obligation to withhold 30% from income earned on U.S. securities. Defendant Kelly declined to provide the requested Form W-9.   Instead, he signed

forms choosing to divest himself of U.S. securities and avoided the U.S. income tax withholdings.  Despite admitting to having a "limited knowledge of banking," Defendant Kelly never sought any professional advice from an accountant, tax attorney or advisor regarding the potential tax implications or reporting obligations of his Finter Account because he "didn't see a need" and he "had no questions about it."

Defendant Kelly remained abroad after opening his Finter Account until he was arrested and extradited in April 2008.  In December 2008, Defendant Kelly pleaded guilty to federal criminal charges.  *See* Case No. 2:08-CR-20316, ECF No. 12, PageID.35.  As part of his plea, Defendant Kelly faced a possible fine of up to $250,000.  *Id* at PageID.39.

At the sentencing hearing, after considering information furnished during the presentence investigation, including by Defendant Kelly, the Court advised that it was "satisfied that the Defendant is unable to pay a fine and so I will waive the imposition of a fine because of his inability to pay."  *Id*., ECF No. 19, PageID.166. Defendant Kelly was released in 2010.   On July 21, 2011, Defendant Kelly contacted Finter Bank and told a bank representative that his ex-wife had reported his Finter Account to the IRS and asked whether Finter Bank would provide his information to the IRS.

In July 2012, Finter Bank issued a letter to Defendant Kelly advising him that because he had not provided the bank with information regarding his U.S. Tax Compliance, Finter Bank would close his Finter Account. Between July 2012 and December 2012, the Finter Account was temporarily closed by Finter Bank due to Defendant Kelly's failure to provide the requested U.S. Tax Compliance documentation. In December 2012, Finter Bank reactivated the Finter Account, designated it as "mandatory high risk," and noted internally that "US authorities most probably are not aware of these assets with FBZ since the client is not properly documented for US tax purposes."

By letter dated December 23, 2013, Finter Bank notified Defendant Kelly of its intention to disclose his Finter Account to U.S. authorities through the Swiss Bank Program.  Defendant Kelly admitted that he received the letter on or about that date.  Finter Bank requested that Defendant Kelly submit proof of his compliance with U.S. tax laws, including copies of "FBAR" forms for all years during which his Finter Account was open, and suggested that he confirm the "timely filing of such FBAR forms."  In the same letter, Finter Bank also "*strongly urge[d]*" Defendant Kelly to "*promptly contact a qualified U.S. tax specialist in order to*: determine any applicable U.S. tax consequences in connection with [his] Finter Account(s), including any potential additional U.S. tax filing or other

disclosure obligations with respect to prior tax years or currently." ECF No. 48, PageID.525-527.

Finter Bank also advised Defendant Kelly by that same letter and by phone that, if he had not previously reported his Finter Account to the IRS, he should consider participating in the Department of the Treasury's Offshore Voluntary Disclosure Program ("OVDP").

Finter Bank subsequently disclosed Defendant Kelly's Finter Account to the United States Department of Justice through the Swiss Bank Program.  In April 2014, Defendant Kelly, through his Attorney Charles Haas, submitted a letter requesting preclearance and participation into the 2014 OVDP for years 2008 through 2013. On January 8, 2015, the IRS faxed Defendant Kelly's representative to inform him that Defendant Kelly was cleared to make a voluntary disclosure. Exhibit L, IRS Disclosure Fax, USA 485. As set forth in the OVDP Frequently Asked Questions and Answers for 2014:

> [p]reclearance does not guarantee a taxpayer acceptance into the OVDP." Taxpayers pre-cleared for OVDP must follow the steps outlined below (FAQ 24) within 45 days from receipt of the fax notification to make an offshore voluntary disclosure. Taxpayers must truthfully, timely, and completely comply with all provisions of the OVDP.

In April 2015, the IRS notified Defendant Kelly through his representative that he was preliminarily accepted into OVDP and advised that Defendant Kelly's acceptance would depend upon whether his disclosure is truthful and complete,

6

and whether he cooperates with the IRS in determining the correct tax liability and makes good faith arrangements with the IRS to pay in full the tax, interest, and penalties determined by the IRS to be applicable.

In December 2016, as part of his OVDP submission, Defendant Kelly filed delinquent FBARs for 2008 through 2013.  On his delinquent 2013 FBAR, Defendant Kelly reported that his Finter Account held a maximum account value of $1,538,251 for 2013.  Defendant Kelly did not file FBARs for 2014 and 2015, and did not ask any professional advisors to prepare FBARs for these years, as reflected by his deposition testimony.

Meanwhile, in September 2015, Defendant Kelly's Finter Account was closed. At the time, the balance of Defendant Kelly's Finter Account was approximately $1.5 million.  While the Finter Account was open, Defendant Kelly testified that he made just one withdrawal in the amount of $310,000.  In December 2015, Defendant Kelly engaged the services of Emmanuel Agustoni, of Switzerland, to transfer his Finter Account funds to a new account, ending in 1392, located at Bank Alpinum AG, in Liechtenstein.   Defendant Kelly testified that he engaged the services of Mr. Agustoni, an expert in "financial investments," to manage and invest his funds after his Finter Account was closed.  Defendant Kelly is the sole beneficial owner of the Bank Alpinum Account.

On February 8, 2018, Defendant Kelly signed and submitted to the IRS under penalty of perjury, a Form 433-A, Collection Information Statement, to request an installment agreement.  In that form, Defendant Kelly reported that he maintained a domestic bank account with a balance of $663.34. Defendant Kelly did not report his Bank Alpinum Account on his sworn Form 433-A.  In April 2018, Defendant Kelly was removed from OVDP due to his failure to cooperate by not signing and returning the requested Form 906 closing agreement and his failure to disclose the disposition of the funds in his foreign account.

The IRS thereafter opened an examination to determine Defendant Kelly's compliance with the filing of FBARs.  The IRS determined from its examination that Defendant Kelly willfully failed to timely report on an FBAR his financial interest in the Finter Account by the statutory deadline for 2013, 2014, and 2015. On September 12, 2019, the IRS mailed Defendant Kelly a letter proposing willful FBAR penalties for years 2013-2015.  The letter enclosed a report titled "FBAR Penalties; Post 10/22/04; SB/SE Examiners Lead Sheet" which detailed the basis of the IRS's proposed willful FBAR assessment.

The report and attached computation sheet explained how the IRS calculated the proposed penalties.  Those documents explained that the IRS calculated the penalties by applying the 50% penalty to the maximum balance during a calendar year for Defendant Kelly's Finter Account between 2013 and 2015, resulting in a

total penalty of $769,126. To apportion the total penalty, the IRS assessed a

$100,000 penalty for 2015. The remaining penalty amount was allocated between

2013 and 2014 per the discretion of the IRS in accordance with the Internal

Revenue Manual and subject to the statutory cap on willful FBAR penalties as

prescribed by 31 U.S.C. § 5321(a)(5)(C). The proposed penalties were approved

by IRS Group Manager Erik W. Anderson. On November 1, 2019, the IRS

assessed civil FBAR penalties against Defendant Kelly for 2013, 2014, and 2015

in the amounts of $336,432, $332,694, and $100,000, respectively.

On November 7, 2019, the IRS mailed Defendant Kelly and his attorney a

Letter 3708 demanding payment of the $769,126 willful FBAR penalty assessed

against him. The unpaid balance on the FBAR assessments as of October 26,

2022, including failure to pay penalties, interest, and other statutory accruals under

31 U.S.C. § 3717, is $929,904.94; statutory additions continue to accrue from and

after October 26, 2022.

As of June 30, 2022, the balance of Defendant Kelly's Bank Alpinum

Account totaled over 1.2 million. Defendant Kelly testified that he has withdrawn

only $20,000 from the Bank Alpinum Account. Defendant Kelly failed to timely

file 2016, 2017, 2018, 2019, or 2020 FBARs for his Bank Alpinum Account.

### III.   LAW & ANALYSIS

#### A. Standard of Review

Summary judgment is appropriate if the materials in the record show "that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c).  "[W]hile a court must draw all inferences in a light most favorable to the non-moving party, it may grant summary judgment if the record, taken as a whole, could not lead a rational trier of fact to find for that party."  *See McKinnie v. Roadway Express, Inc.*, 341 F. 3d 554, 557 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*. 475 U.S. 574, 587 (1986)).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in the original).  A genuine issue of fact exists only where the evidence is such that a reasonable jury could find for the non-movant.  *Anderson*, 477 U.S. at 248 (emphasis added); *see also Mounts v. Grand Trust Western R.R*., 198 F.3d 578, 580 (6th Cir. 2000).

The government is required to prove its civil FBAR case by a preponderance of the evidence.  *United States v. Ott*, 441 F. Supp. 3d 521, 527 (E.D. Mich. 2020).

To this end, the government is aided by a presumption of correctness as to its

official determinations.

> The presumption of regularity supports the official acts of public
> officers and, in the absence of clear evidence to the contrary, courts
> presume that they have properly discharged their official duties.

*United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 14-15 (1926). The Court

makes a de novo determination of whether the defendant willfully violated the

FBAR requirement. *See United States v. McBride*, 908 F. Supp. 2d 1186, 1201 (D.

Utah 2012) (citing *United States v. Williams*, No. 1:09-cv-437, 2010 WL 3473311

(E.D. Va. Sep. 1, 2010)), rev'd on other grounds, *United States v. Williams*, 489

Fed. Appx. 655 (4th Cir. 2012). Under de novo review, the decision is based on the

merits of the case, rather than the record developed at the administrative level.  *Id.*

Once a Court finds that the defendant committed a willful violation, it reviews the

amount of the calculated penalty under an abuse of discretion standard borrowed

from the Administrative Procedure Act.  5 U.S.C. § 706; *Landa v. United States*,

153 Fed. Cl. 585, 601 (2021).  Under this standard, the scope of review is "narrow

and deferential," and "the court must not substitute its judgment for the agency's."

*United States v. Williams*, No. 1:09-CV-00437, 2014 WL 3746497, at * 1 (E.D.

Va. June 26, 2014).

### B. Statutory and Regulatory Framework for the FBAR Penalty

Under the Currency and Foreign Transactions Reporting Act, also known as

the Bank Secrecy Act ("BSA"), the Secretary of the Treasury requires U.S. persons to file an FBAR if they have a financial interest in or authority over a foreign account exceeding $10,000 in value in the preceding calendar year.  31 U.S.C. § 5314(a).  To implement this statutory mandate, the Secretary published regulations requiring any United States citizen "having a financial interest in, or signature or other authority over, a bank, securities or other financial account in a foreign country" to report such relationship to the Treasury Department for each year in which such relationship exists and to "provide such information as shall be specified in a reporting form prescribed under 31 U.S.C. § 5314."  31 C.F.R. § 1010.350.  "The form prescribed under Section 5314 is the Report of Foreign Bank and Financial Accounts (TD-F 90-22.1), or any successor form."  *Id.*  For calendar years 2013, 2014, and 2015, the FBAR was the FinCEN Form 114, and it was due on June 30, 2014, June 30, 2015, and June 30, 2016, respectively.

Section 5321 of Title 31 authorizes the Secretary of the Treasury to impose a civil penalty on any person who does not comply with the reporting requirements described above. 31 U.S.C. § 5321(a)(5).  In the case of a willful violation of the requirement, the FBAR penalty statute allows a maximum penalty of $100,000 or 50 percent of the balance in the account at the time of the violation, whichever is greater.  *Id.* at § 5321(a)(5)(A)-(D).

### C. Liability

To prove liability for the FBAR assessments against Defendant Kelly, the United States must prove by a preponderance of the evidence that (1) Defendant Kelly was a citizen during the disputed years; (2) Defendant Kelly had a financial interest in, or signatory or other authority over, a foreign financial account; (3) the account had a balance of $10,000 or more during each year at issue; (4) Defendant Kelly failed to disclose the account to the IRS by June 30 of 2014, 2015, and 2016 on FinCen Form 114 (the FBAR); (5) the failure to report the account was knowing or reckless; and (6) the penalty was proper. *McBride*, 908 F. Supp. 2d at 1201.

Defendant concedes that he was a U.S. citizen during the disputed years and that he had a financial interest in, and authority over, a foreign bank account. He further admits that the account had a balance of $10,000 or more during each year at issue and that he did not timely disclose his account by the FBAR deadline–June 30, 2014, June 30, 2015, and June 30, 2016. Thus, the core issue is whether Defendant Kelly willfully failed to file an FBAR that reported the Finter Account for the years 2013, 2014 and 2015.

### 1. Willfulness

"Section 5321(a)(5) does not define how to assess whether an individual acted willfully in his failure to comply with the reporting requirements imposed by § 5314." *Id*. The Supreme Court has found that "where willfulness is a statutory

condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." *Safeco Ins. Co. of Am. V. Burr*, 551 U.S. 47, 57 (2007).

A taxpayer recklessly complies with IRS filing requirements when he "(1) clearly ought to have known that (2) there was a grave risk that the filing requirement was not being met and if (3)  he was in a position to find out for certain very easily." *Bedrosian v. United States of Am. Dep't of the Treasury, Internal Revenue. Serv.*, 912 F.3d 144, 153 (3d Cir. 2018) (internal citations and quotation marks omitted).  An additional subcategory of recklessness has been recognized by courts referred to as "willful blindness." *See Ott*, 441 F. Supp. 3d at 528; *United States v. Flume*, 390 F. Supp. 3d 847, 855 (S.D. Tex. 2019) ("Willful blindness–as where a defendant consciously chooses to avoid learning about reporting requirements–is also a form of recklessness.").  The Court analyzes whether the Defendant recklessly failed to file his FBARs for the year at issue using an objective standard; and must find the conduct "entail[s] an unjustifiably high risk of harm that is either known or so obvious that it should be known." *SafeCo*, 551 U.S. at 57.

Willfulness may be proven through inference from conduct meant to conceal or mislead sources of income or other financial information.'" *McBride*, 908 F. Supp. 2d at 1205 (citing *United States v. Sturman*, 951 F.2d 1466, 1476-77 (6th

Cir. 1991)).  Willful intent may be established with "circumstantial evidence and reasonable inferences drawn from the facts because direct proof of the taxpayer's intent is rarely available." *Id.*

A range of evidence of concealment has been found to be probative of a taxpayer's willfulness, such as "creating 'numbered' accounts to avoid detection," *Ott*, 441 F. Supp. 3d at 531, and requesting a "hold mail" service. *United States v. Gentges,* 531 F. Supp. 3d 731, 751 (S.D.N.Y. 2021). "Along with 'hold mail' service [], a numbered account is often recognized as a 'service[] [that] allow[s] U.S. clients to eliminate the paper trail associated with the undeclared assets and income they h[o]ld [in foreign accounts].'" *Gentges*, 531 F. Supp. at 736 n.2 (quoting *United States v. Horowitz*, 978 F.3d 80, 83 (4th Cir. 2020)).  Further, courts examine taxpayers' course of conduct in reviewing the IRS's willfulness determination.  *See United States v. Collins*, Civil Action No. 18-1069, 2021 WL 456962, at * 4 (W.D. Pa. Feb. 8, 2021) (finding a "decades-long course of conduct, omission and scienter" by the taxpayer in failing to disclose his foreign accounts), aff'd, 36 F.4th 487 (3d Cir. 2022) ("*Collins I*").

Defendant Kelly's conduct regarding his Finter Account easily meets the willfulness standard.  He exhibited an unmistakable pattern of concealment along with a reckless disregard of his federal reporting obligations that he could have easily ascertained.  The undisputed record shows Defendant Kelly took steps to

conceal his Finter Account from the outset.  He designated that his Finter Account operate as a numbered account and requested the bank to retain his mail rather than have it sent to him at his residence, which is conduct meant to conceal his account from the IRS.  *See Kimble v. United States*, 141 Fed. Cl. 373, 384 (2018) (granting summary judgment and finding evidence of concealment where the taxpayer "instructed UBS not to send any account-related correspondence to the United States"), aff'd, 991 F.3d 1238 (Fed. Cir. 2021); *Horowitz*, 978 F.3d at 88 (affirming summary judgment on evidence that the taxpayers set up their Finter account as a numbered account with hold mail service).

Further, when Defendant Kelly opened his Finter Account he completed a document titled "Tax Form U.S. Withholding/Individual," on which Finter Bank informed Defendant Kelly of his obligation to provide a completed Form W-9, Request for Taxpayer Identification Number and Certification in order to disclose his identity to the United States.  Rather than disclose his identity to the IRS by completing the requested W-9 Form, Defendant Kelly chose to divest himself of U.S. securities, thereby avoiding the 30 % U.S. income tax withholdings obligation of Finter Bank and keeping his Finter Account hidden from government detection. *United States v. Goldsmith*, 541 F. Supp. 3d 1058, 1101 (S.D. Cal. 2021) (finding taxpayer acted willfully by signing QI related forms and electing to divest himself

of investing in U.S. securities, as Defendant Kelly has done here, rather than sign a W-9 and disclose the account to the government).

There is also no disputed issue of material fact that Defendant Kelly had actual knowledge of the FBAR reporting requirement no later than December of 2013, or 6 months before the June 30, 2014 reporting deadline to file his 2013 FBAR.  On December 23, 2013, Defendant Kelly received a letter from Finter Bank advising him of its intent to participate in the Swiss Bank Program and urging Defendant Kelly to disclose his account to the IRS by participating in the Offshore Voluntary Disclosure Program for the years that he failed to timely file an FBAR.  ECF No. 48, PageID.523-527.   Finter Bank's December 2013 letter advised Defendant Kelly: "**we strongly urge you to promptly contact a qualified U.S. tax specialist in order to** (i) determine any applicable U.S. tax consequences in connection with your Finter Bank account(s), including any potential additional U.S. tax return filing."  *Id*.  In that same letter, Finter Bank requested that Defendant Kelly provide "Documentation Relating to Tax Compliance in Past Periods," such as "A copy of your Report of Foreign Bank and Financial Accounts ("FBAR") forms for all years during which the account has been open. . . ."  *Id*.

Defendant Kelly testified that he also received a phone call from a Finter Bank employee informing him about OVDP and that the bank would report his Finter Account to U.S. authorities.  Further, Defendant Kelly admitted that he

17

knew about the FBAR filing requirements when he initially applied to OVDP, which was still two months before the 2013 FBAR filing deadline of June 30, 2014.

These undisputable facts leave no doubt that Defendant Kelly acted with actual knowledge of the FBAR reporting requirement when he violated his statutory duty to timely report his Finter Account.  Defendant Kelly's actual knowledge of the FBAR reporting requirement coupled with his pattern of deceitful conduct demonstrates that his failure to timely file his 2013 FBAR, and his failure to file the 2014 and 2015 FBARs at all was knowing and intentional, and thus willful.

However, even if the Court concluded that Defendant Kelly did not commit a knowing violation of the FBAR reporting requirement, these same facts—the bulk of which come from Defendant Kelly's own admissions—demonstrate that he acted recklessly, and thus willfully, in failing to satisfy his FBAR reporting requirements for 2013, 2014, and 2015.

After receiving the express warning from Finter Bank detailed above, Defendant Kelly still did not reach out to any accountant, advisor, or other tax professional, or otherwise inquire about his federal reporting obligation. Nor did Defendant Kelly otherwise take any steps to determine what U.S. reporting or filing requirements applied to his Finter Account.  This conduct alone

demonstrates willful blindness and a reckless disregard for his potential reporting requirements.

But even before he received notice from Finter Bank in 2013, the language in the "Tax Form U.S. Withholding/Individual" document he signed back in 2008 was sufficient to put Defendant Kelly on notice that there was a high likelihood that his Finter Account posed some tax or other federal reporting obligations. Indeed, when confronted with this form, Defendant Kelly admitted as follows:

> Q: So when you received this document titled Tax Form U.S. Withholding/Individual, this alerted you to the fact that there might be some tax implications connected with this account, correct?
> A: I was to understand there would be reporting done to this account, yes.

In addition to signing forms advising him of U.S. tax reporting obligations, Defendant Kelly admitted that when he opened his Finter Account, he understood it to be interest bearing and income producing. These facts ought to have put him on notice of his federal reporting requirements or at the very least prompted him to investigate what reporting obligations he might have been under. Yet, Defendant Kelly did nothing and kept the account a secret, because he "didn't see a need" and "had no questions about it."

Numerous courts have found similar conduct indicative of recklessness. In *Goldsmith*, 541 F. Supp. 3d at 1091-92, the court granted summary judgment to the government finding that the taxpayer's conduct met the objective standard of

recklessness, where the taxpayer "signed multiple forms describing himself as the beneficial owner of the Account, a U.S. taxpayer, and referencing U.S. reporting obligations, yet, he did nothing to investigate what tax and reporting obligations he was under for that Account," and "knew the Account was generating income." Likewise, in *Horowitz*, the court affirmed the district court's grant of summary judgment on evidence that "[d]espite numerous red flags, [the taxpayers failed to] ma[k]e a simple inquiry" and thus recklessly disregarded the FBAR filing requirement.  978 F.3d at 90.

Here, too, Defendant Kelly's failure to investigate his potential reporting obligations after (1) he opened the Finter Account and knew it would generate interest income, (2) he was notified in writing and on the phone by Finter Bank of the FBAR filing requirement, (3) he was urged to consult with a tax advisor to determine the tax consequences of his Finter Account, and (4) he signed documents that made him aware of the federal tax implications associated with his Finter Account, constitutes willful blindness and a reckless disregard for his potential reporting requirements.

Defendant Kelly's blasé attitude about his federal reporting obligations continued even after he requested pre-clearance and participation into OVDP in April 2014, which further confirms his recklessness.  By this time, Defendant Kelly admits he was aware of his FBAR filing requirement, but never bothered to

inquire about the FBAR filing deadline for 2013 or for any other year, and never asked professional advisors to prepare 2014 or 2015 FBARs.   Defendant Kelly's failure to make any inquiry regarding the tax implications of his Finter Account amid numerous red flags and his "limited banking knowledge" demonstrates either his conscious effort to avoid learning about his FBAR reporting obligations or at the very least his reckless disregard for the same.  *Ott,* 441 F. Supp. 3d at 530-31 (finding recklessness where the taxpayer "should have known there was a risk of noncompliance, yet he failed to take any investigative or corrective action").

Defendant Kelly is a well-educated, former anesthesiologist who had the financial wherewithal to seek out advice from a competent tax advisor with knowledge and experience in these matters, as demonstrated by his decision to seek out and hire a Swiss financier to further invest his funds after his Finter Account was closed.  Instead, Defendant Kelly allowed the 2013 FBAR filing deadline to pass on June 30, 2014, without making any effort to ensure that it was timely filed, and never filed for 2014 or 2015. Defendant Kelly's reckless behavior is further demonstrated by his continual failure to timely file FBARs in more recent years for his Bank Alpinum Account in Lichtenstein, the balance of which has at all times exceeded $1 million. Such conduct is objectively reckless. Together, these undisputed facts establish that Defendant Kelly "clearly ought to have known" that there was a grave risk that he was not complying with his 2013,

2014, and 2015 FBAR reporting obligations, and he was in a "position to find out for certain very easily" after being warned by Finter Bank. *Bedrosian I*, 912 F.3d at 153. Thus, even if the Court determines that Defendant Kelly did not knowingly fail to timely file FBARs, the evidence nonetheless demonstrates that Defendant Kelly acted recklessly, and therefore willfully, in failing to report his Finter Account for 2013, 2014, and 2015.

Defendant Kelly's primary defense appears to be that, in order to try to avoid a criminal prosecution and bring himself into compliance with his prior FBAR reporting requirements, he applied to OVDP before the FBAR filing deadline for 2013 and participated in the program until he was removed in 2018. ECF No. 47, PageID.328-329.  Defendant Kelly argues that "[t]here cannot possibly be willfulness through participation in the plaintiff's own program." *Id*., PageID.328.  Defendant Kelly further asserts that he did not hide the existence of the account or the amount of money he held in the account. *Id*., PageID.329.  In effect, Defendant Kelly argues that his failed participation in the OVDP entitles him to an elimination of all prior and future FBAR penalties for his bank account at the Finter Bank.  Defendant Kelly's argument lacks merit for two reasons.

First, as an initial matter, although Defendant Kelly's OVDP years covered 2008 through 2013, when he applied to the program in April 2014, the 2013 FBAR deadline had not yet come due, so it was not yet possible for him to request OVDP

relief for 2013.  Accordingly, any suggestion by Defendant Kelly that he assumed his participation in OVDP satisfied his legal reporting duty for 2013 through 2015 should be rejected by this Court as objectively unreasonable.  Further, participating in the OVDP without completing the disclosure program does not absolve a taxpayer of willfulness in failing to timely file FBARs.  The OVDP civil settlement structure is only available for taxpayers who "truthfully, timely, and completely" comply with all provisions of the program, and explains that taxpayers are expected to comply with the FBAR statute going forward.

Additionally, the Third Circuit in *Collins* rejected the taxpayer's argument and properly noted that "a voluntary correction" is not "legally sufficient to negate willfulness as a matter of law." *United States v. Collins*, 36 F.4th 487, 493 (3d Cir. 2022) (citing *United States v. Klausner*, 80 F.3d 55, 63 (2d Cir. 1996) ("[E]ventual cooperation with the government does not negate willfulness.")).

Here, Defendant Kelly applied for OVDP before the 2013 FBAR deadline but was not preliminarily accepted into the program until ten months after the FBAR deadline passed.  In the meantime, rather than taking steps to ensure that he met the FBAR deadline for 2013 of which he had actual knowledge, Defendant Kelly allowed the deadline to pass, and did not file his 2013 FBAR until December 2016.  Defendant Kelly failed to file at all the 2014 and 2015 FBARs, even though he knew he was required to file the FinCEN 114 for these years and was

participating in OVDP when the FBAR deadlines passed.  Thus, Defendant Kelly's

incomplete participation in OVDP for 2013 and failure to heed concurrent FBAR

deadlines for 2014 and 2015 do not create a material question of fact as to

Defendant Kelly's willful failure to comply with his FBAR reporting requirements.

Second, Defendant Kelly not only did not complete the disclosure program,

but he was removed for failure to cooperate.  Defendant Kelly was eventually

removed for failing to sign the Form 906 closing agreement and for failing to

cooperate with the collections Revenue Officer, on which he failed to report his

Bank Alpinum Account.  Defendant Kelly's Exhibit 5 at PageID.355 (04/09/2018

through 05/01/2018 entries).  Although Defendant Kelly sought an installment

agreement from the IRS ostensibly to pay the miscellaneous Title 26 penalty, he

failed to disclose the disposition of his Finter Bank funds to the Revenue Officer

and omitted his Bank Alpinum Account from his Collection Information

Statement, on which he was requested to disclose all of his assets to the IRS to

reach an installment agreement.  The record reflects that Defendant Kelly had the

means to fully pay the OVDP miscellaneous Title 26 offshore penalty, but he

continued to conceal his funds from the government, which resulted in his ultimate

removal from the program.  None of the materials cited by Defendant Kelly prove

that his OVDP participation means he was not willful in his failure to timely file

FBARs for 2013-2015.  Fed. R. Civ. P. 56(c)(1).  Thus, Defendant Kelly's failure

24

to successfully complete OVDP and reliance on his incomplete participation in the program does not negate his willfulness.

The Court also rejects Defendant Kelly's attempts to distinguish the FBAR cases the United States relies on to prove that Defendant Kelly was willful. Defendant Kelly argues that since *United States v. Ott*, 441 F. Supp. 3d 521 (E.D. Mich. 2020), and *Kimble v. United States*, 141 Fed. Cl. 373 (2018), involve taxpayers who opted out of OVDP rather than being removed by the IRS, and the taxpayer in *Bedrosian v. United States*, 42 F.4th 174, 180 (3d Cir. 2022), did not participate in OVDP, they are inapplicable to the instant case. Defendant Kelly also mistakenly interprets the Third Circuit's decision in *United States v. Collins*, 36 F.4th 487 (3d Cir. 2022), by postulating that "had Collins [] remained in the OVDP instead of voluntarily withdrawing, the willfulness question would have been decided differently."

Defendant Kelly's superficial analysis of these four cases misses the mark, and he fails to distinguish how his conduct was not knowingly or recklessly willful under this body of case law. In *Ott*, this Court focused its analysis on the taxpayer's constructive knowledge of the FBAR filing requirement and his efforts to conceal the account. 441 F. Supp. 3d at 529-32. Similarly, in *Kimble*, the Court of Federal Claims did not dwell on Kimble's OVDP participation and instead focused the willfulness analysis on Kimble's failure to disclose the existence of her

25

foreign account and her constructive knowledge of the FBAR filing requirement, which supported a finding of willfulness based on recklessness.  141 Fed. Cl. at 385-86.

Defendant Kelly admits to having actual knowledge of the FBAR filing requirement before the deadline for the first year for which he was assessed, but he still failed to timely file FBARs for 2013 through 2015 and took no steps to hire a competent tax professional to ensure his timely compliance with the statute once he learned of the reporting requirement.  Defendant Kelly entered OVDP to address prior noncompliance with the FBAR statute, and he was required to prospectively comply with the statute going forward.  Further, Defendant Kelly was not preliminarily accepted into the program until 10 months after the deadline to file his 2013 FBAR had passed.  Rather than timely file for that year, he allowed the deadline to pass.  Defendant Kelly never fully cooperated with the IRS in regard to the 2013 year or the prior years, and the 2014 and 2015 years were never part of the OVDP.  Thus, Defendant Kelly's OVDP defense does not excuse his delinquent filing of his 2013 FBAR and failures to file FBARs for 2014 and 2015.

Defendant Kelly's reading of *Collins* and *Bedrosian* is also inapposite and calls for speculation.  The quoted language Defendant Kelly cites from *Collins* does not bolster his argument that, if Defendant Kelly remained in OVDP, the IRS would have assessed a nonwillful FBAR penalty.  In that text, the Third Circuit

simply observed that, after Collins' incomplete participation in OVDP, the IRS

audited and assessed willful FBAR penalties—the precise scenario here.

Defendant Kelly never fully cooperated with the IRS in regard to the 2013 year or

the prior years, and the 2014 and 2015 years were never part of the OVDP.

Further, *Collins* and *Bedrosian* stand for the proposition that taxpayers

cannot rely on their eventual cooperation to absolve themselves of their willful

violations.  *See Collins,* 36 F.4th at 491-93 (rejecting Collins' argument that his

application for amnesty prior to the IRS' investigation negates willfulness);

*Bedrosian II*, 42 F.4th at 180 (noting that the taxpayer's cooperation began only

after he was exposed as having a hidden foreign account).

Defendant Kelly's second argument is that his hiring of a Swiss account

manager to reinvest his funds, and purported attempts to report his other foreign

bank account at Bank Alpinum in Liechtenstein, constitute efforts to comply with

the FBAR filing requirement for his Finter Account.  Defendant Kelly asserts in

his affidavit that he "asked Mr. Agostini, individually and for the Liechtenstein

bank, to make certain that the bank disclosures were being sent."  Defendant Kelly

Affidavit ¶ 15, PageID.336. Defendant Kelly further contends that after his

deposition in this case, he "contacted Mr. Agostini to obtain the disclosures sent by

him or Bank Alpinum, and only then learned that the disclosures had been

prepared but not sent to the IRS" because "the bank's practice was to prepare the annual disclosures but then retain them.

Defendant Kelly conflates his FBAR compliance for his two foreign bank accounts; he then conflates his disclosure obligations with the banks' disclosure obligations.  This case involves FBAR penalties assessed for Defendant Kelly's failure to timely file FBARs for the 2013 through 2015 years for his Finter Account in Switzerland.  Defendant Kelly did not hire Emanuel Agostini, his Swiss financial adviser, until after his Finter Account was closed and only for management of his Bank Alpinum Account.  Thus, Defendant Kelly's misplaced reliance on his decision to hire Mr. Agostini for account management and the purported preparation of "annual reports" or "annual disclosures" by the bank for the Bank Alpinum Account is irrelevant to the assessed FBAR penalties for his Finter Account.

While Defendant Kelly was participating in the OVDP for the 2008 through 2013 years, he also admits that he made a conscious effort to hire a Swiss account manager to "maximize his return on invested or deposited funds."  Defendant Kelly's deliberate choice to hire Agostini to move and invest his funds in the Bank Alpinum Account while not consulting a tax advisor to ensure his compliance with his federal reporting obligations further demonstrates his willfulness in failing to satisfy his FBAR filing requirements for 2013-2015.  *See, e.g., Ott*, 441 F. Supp.

3d at 530-31 (finding recklessness where the taxpayer "should have known there was a risk of noncompliance, yet he failed to take any investigative or corrective action" by failing to consult his long-time tax preparer).

## 2. Penalty

Once a district court finds that the defendant committed a willful violation, it reviews the amount of the IRS's calculated penalty under an abuse of discretion standard borrowed from the Administrative Procedure Act.  5 U.S.C. § 706*; Landa v. United States*, 153 Fed. Cl. 585, 601 (2021).  Under this standard, the scope of review is "narrow and deferential," and "the court must not substitute its judgment for the agency's."  *United States v. Williams*, No. 1:09-CV-00437, 2014 WL 3746497, at * 1 (E.D. Va. June 26, 2014).

The Court finds the undisputed record also establishes that the penalties assessed due to Defendant Kelly's willful violation of his FBAR reporting requirements for 2013, 2014, and 2015 were proper.  For a willful FBAR violation, the IRS may assess a civil willful FBAR penalty of up to $100,000 or 50% of the balance of the account at the time of the violation, whichever is greater. 31 U.S.C. § 5321(a)(5)(C)(i), 5321(a)(5)(D)(ii). The Internal Revenue Manual, which provides guidance to IRS employees in administering the tax laws within their discretion, provides that in cases involving multiple years:

> the total penalty for all years under examination will be limited to
> 50% of the highest aggregate balance of all unreported foreign

financial accounts during the years under examination.  In such cases, the penalty for each year will be determined by allocating the total penalty amount to all years for which the FBAR violations were willful based upon the ratio of the highest aggregate balance for each year to the total of the highest aggregate balances for all years combined, subject to the maximum penalty limitation in 31 U.S.C. § 5321(a)(5)(C) for each year.

Here, the IRS properly exercised its discretion in choosing a penalty amount well below the statutory maximum.  Defendant Kelly had one foreign account each year and, therefore, there is not more than one account to aggregate each year. Because Defendant Kelly's Finter Account always exceeded $1.5 million through 2013, 2014, and 2015, the penalty assessed for each year is well within the statutory maximum penalty limitation under any interpretation of the "date of violation."

The total penalty in this case was calculated based upon the available Finter Bank Account statements for 2013, 2014, and 2015, which reflected the following balance information: $1,538,251 on January 1, 2013; $1,526,550.20 on December 31, 2013; $1,523,855.60 on June 30, 2014,6 $1,521,161 on December 31, 2014; and $1,518,666 on June 30, 2015.  Year 2013 had the highest maximum balance during the calendar year of $1,538,251.  Regardless of how this Court interprets the "date of violation," the statutory maximum penalty for 2013 and 2014 would be at least $750,000 (or 50% of the account on the "date of violation") for each year, but the penalties assessed for each year are all far less than that ceiling.  And

the statutory penalty assessed for 2015 is $100,000, which is the statutory

maximum for that year since the balance of the account on June 30, 2016 was $0

but the Finter Account held over $1.5 million when it was closed in September

2015.

After reducing the total $769,126 penalty by $100,000, the IRS allocated the

remaining penalty of $669,126 among the 2013 and 2014 years by determining the

ratio of the maximum balance during the calendar year for each year against the

combined maximum balance during the calendar year for both years.   For 2013,

the ratio of the maximum balance during the calendar year of $1,538,251 against

the combined 2013 and 2014 maximum balance during the calendar year of

$3,059,412 is 50.27% ($1,538,251/$3,059,412).  The IRS then multiplied 50.27%

ratio by the remaining $669,126 FBAR penalty and allocated that amount as the

penalty for the 2013 year, resulting in the properly assessed penalty of $336,432,

with the remaining $332,694 (or the remaining 49.73% ratio) to be allocated to and

assessed for the 2014 year. Each year is thus well within the statutory maximum.

As of October 26, 2022, the balance of the 2013 through 2015 FBAR

penalty, including failure to pay penalties and interest, is $929,904.94 with

statutory additions continuing to accrue from and after October 26, 2022.  In

exercising its discretion, the IRS calculated the penalties for each violation in

accordance with the statutory ceiling prescribed in 31 U.S.C. § 5321(a), the

guidelines in the Internal Revenue Manual, and the balance information provided by Finter Bank.  Thus, the assessed penalties are proper, and the IRS did not abuse its discretion.

## IV.   CONCLUSION

Accordingly, Plaintiff United States of America's Motion for Summary Judgment [#48] is GRANTED.  Defendant James J. Kelly Jr.'s Motion for Summary Judgment [#47] is DENIED.  Because there is no just reason for delay, and pursuant to Fed. R. Civ. P. 54(b), judgment will be entered on Count I in favor of Plaintiff and against Defendant in the amount of $929,904.94 for Defendant's willful violations of his reporting obligations under Section 5314; which represents $769,126.00 in principal amount due, along with $22,968.42 in prejudgment interest under 31 U.S.C. § 3717(a)(1), and late payment penalty under 31 U.S.C. § 3717(e)(2) in the amount of $137,810.52, plus statutory additions from and after October 26, 2022 for the calendar years 2013, 2014 and 2015.

The May 8, 2023 hearing on the parties' Motions for Summary Judgment is cancelled.  The parties shall appear for a Status Conference on <u>May 8, 2023 at 2:00 p.m.</u>

SO ORDERED.

Dated:  May 2, 2023                                     /s/Gershwin A. Drain
                                                       GERSHWIN A. DRAIN
                                                       United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record by electronic and/or
ordinary mail.

<u>/s/ Teresa McGovern</u>
Case Manager